OPINION OF THE COURT
Paul I. Miles, J.
Each of these proceedings under CPLR article 78 is consid *747 ered to involve the same general condition and will, therefore, be treated together in one decision.
Basically each of the petitioners was subject to a urine test for the presence of marihuana by the use of the so-called Syva Emit-st Drug Detection System. Each of these petitioners had been previously released on temporary release and was tested upon return. Evidently the test results were positive. Each of the petitioners was removed from temporary release and was otherwise penalized. From the written and oral arguments on the Davis petition it is understood that he is scheduled to appear before the Parole Board during the month of April.
The reliance by the respondents upon this form of testing procedure has been rejected by appellate courts and particularly by the Fourth Department in the case of Matter of Lahey v Kelly (125 AD2d 923). Evidently the correction officers employed by respondents have been instructed to continue this testing procedure and to continue to impose penalties irrespective of the appellate courts rulings. The only excuse stated by the Attorney-General for such improper action is that the respondents intend to appeal the Fourth Department’s rulings and that they further intend to appeal all local court article 78 rulings which comply with the Fourth Department decision. In fact, the Assistant Attorney-General in his oral arguments candidly states that he understands what the ruling will be by this court in these cases and merely requests that the ruling be made so that the appeal can be taken.
This court is not sure that such a procedure emanates from the Attorney-General’s office. Evidently counsel for the Department of Correctional Services has determined that this is what is to be done. In any event, this now is beyond the stage of being arguably bad faith. It does constitute bad faith. It is virtual contempt of the law and contempt of holdings of an appellate court.
This disregard of established law totally applicable to all courts and all State facilities located in the Fourth Department is bad enough and contemptuous enough by itself. However, such actions place the respondents in an extremely difficult position.
It certainly is the desire of the system to eliminate the use of marihuana and controlled substances by people inside the facilities and people who are permitted to leave on temporary release. However, it is questionable as to whether the testing procedures followed are appropriate (as addressed by the *748 appellate decisions). It is also a question as to whether testing procedures in general do anything to curb the use of marihuana and controlled substances either in prison population or in general society. This court will, however, not become embroiled in that argument.
What is important is that inmates are encouraged to participate properly in temporary release and are encouraged to work their way back into society so that they will be better able to cope with the many problems they will meet upon their full release. Inmates are certainly aware of the appellate rules against the use of these forms of tests. Whether this causes the inmate to be less careful in his activities while on temporary release is always a question. However, the inmate is entitled to rely upon the law as it is interpreted by the appellate courts. By illegally imposing improper tests upon the inmate, the inmate is removed from temporary release and, at least in the case of Davis, is severely prejudiced when he appears before the Parole Board. While it is appropriately argued that the inmate should not use marihuana or controlled substances at any time, it is an absolute given in these cases that the testing procedures and the results of the illegal testing procedures cannot in any way be used to prejudice the inmate.
What is further a problem is the position which now faces these inmates when the court grants their relief. If the Attorney-General immediately appeals and immediately gets a stay order the temporary release program still is terminated as far as the inmate is concerned and the inmate is still prejudiced when he appears before the Parole Board.
These extremely prejudicial results cannot be allowed. The evident bad faith of the respondents must not be allowed to accomplish that which the Fourth Department has held to be improper.
Therefore, it is the order of this court that the relief sought by the petitioners should be granted. There shall be immediate expunging of their records so that there is no reference whatsoever to this test or the test results. Each of them shall be returned to temporary release immediately and above all nothing shall be submitted to the Parole Board with reference to the test or test results or the removal from temporary release which will in any way have any impact whatsoever upon the consideration of the Parole Board dealing with the appropriate release of the inmate.
*749 In the event that the orders in this case and the decisions upon which they are granted are appealed, this court respectfully requests the Appellate Division, Fourth Department, to thoroughly examine into the practices of the Department of Correctional Services with respect to ignoring appellate decisions and the impact that such conduct has upon inmates and the programs which have been set up to hopefully rehabilitate inmates in our correctional facilities.